Veronica A. Procter
PROCTER LAW, PLLC
2718 Montana Avenue, Suite 200
P.O. Box 782
Billings, Montana 59103
Telephone: (406) 294-8915
vp@procterlawfirm.com

Gloria Allred (CA Bar No. 65033)
Marcus Spiegel (CA Bar No. 233146)
Byron R. Lau (CA Bar No. 280519)
ALLRED, MAROKO & GOLDBERG
6300 Wilshire Boulevard, Suite 1500
Los Angeles, California 90048
Telephone: (323) 653-6530
Facsimile: (323) 653-1660
galllred@amglaw.com
mspiegel@amglaw.com
blau@amglaw.com

(*Pro Hac Vice* Admission Pending)

*Attorneys for Plaintiff*

FILED
MAR 1 1 2021
Tom Powers, Clerk
By ______ Deputy Clerk $120

**MONTANA SECOND JUDICIAL DISTRICT COURT,
BUTTE-SILVER BOW COUNTY**

| | |
|---|---|
| JOHN RENNER,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL POLISH, BRING ON THE DANCING HORSES LLC, a Montana Limited Liability Company, and MAKE PICTURES LLC, a California Limited Liability Company,<br><br>Defendants. | **CAUSE NO. DV -** 21-66<br><br>**Hon.** ROBERT J WHELAN<br>JUDGE DEPT. II<br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>SUMMONS ISSUED |

COMES NOW Plaintiff John (a.k.a. "Jack") Renner, by and through his attorney of record, Veronica A. Procter of Procter Law, PLLC, for his complaint against Defendants Michael Polish, Bring on the Dancing Horses LLC, and Make Pictures LLC, and alleges as follows:

**PARTIES**

1. Plaintiff John (a.k.a. "Jack") Renner ("Mr. Renner" or "Plaintiff") is an individual who resides in Washington, D.C. He is an Art Director who has worked for decades in television and film production, along with his wife, Alison Kearney ("Ms. Kearney"), a Production Manager and, more recently, a COVID-19 Compliance Officer.

2. Defendant Bring on the Dancing Horses LLC ("BOTDH") is a Montana Limited Liability Company. On information and belief, it is owned by Defendant Make Pictures LLC.

3. Defendant Make Pictures LLC ("Make Pictures") is a California Limited Liability Company. On information and belief, it is the owner of BOTDH.

4. Michael Polish ("Mr. Polish") is the President of Make Pictures and the Director of a television series BOTDH is producing in Montana named "Bring on the Dancing Horses."

**JURISDICTION AND VENUE**

5. Venue is proper in this Court pursuant to Mont. Code Ann. § 25-2-121(1)(b), Mont. Code Ann. §§ 25-2-115 through 25-2-122, including because Butte-Silver Bow County is where relevant duties were owed, contracts were to be performed, and torts were committed.

6. This Court has personal jurisdiction over Defendants pursuant to Rule 4(b)(1), M. R. Civ. P., because Defendants can be found in Montana, transact business in Montana, and/or have additional contacts and business interests in Montana.

7. This Court has subject matter jurisdiction over this claim because it is brought

under the laws of Montana.

## GENERAL ALLEGATIONS

8. In the fall of 2020, Defendants BOTDH and Make Pictures hired Mr. Renner as a Set Director and Construction Supervisor, and his wife, Ms. Alison Kearney, as the Production's Lead COVID-19 Compliance Officer for a series owned and produced by those entities called Bring on the Dancing Horses (the "Production").

9. Starting on October 7, 2020, Mr. Renner and Ms. Kearney drove from Washington, D.C. to Butte, Montana in a sport utility vehicle packed full of gear and equipment needed to perform their Production jobs, arriving in Butte three days later. They checked in at the Copper King Hotel, where much of the Production crew was staying.

10. On the evening of October 21, 2020, Ms. Kearney arrived at the area designated for cast and crew dining inside the Rib and Chop Restaurant, which restaurant is internally connected to the Copper King Hotel.

11. Defendant Polish was already seated with others, drinking a glass of Guinness.

12. That evening, Mr. Renner arrived to join Ms. Kearney in the designated dining area.

13. Mr. Renner and Ms. Kearney passed approximately 2 to 3 hours in the dining area in friendly conversation, during which time Defendant Polish, who had been joined by his wife, actress Kate Bosworth, continued drinking.

14. As Mr. Renner and Ms. Kearney prepared to depart for the evening, Mr. Renner and Defendant Polish engaged in discussion regarding their respective dogs (both of whom were at the Production site). With reference to shooting dogs that bite, Defendant Polish introduced

the topic of firearms, yelling that he was "always packing heat!"[1]

15. In response, Mr. Renner joked that the only gun he has is a finger. To illustrate, he used one of his hands with its index finger and thumb extended, in imitation of a gun.

16. Without warning, Defendant Polish grabbed Mr. Renner and pushed and/or threw Mr. Renner through the door and onto the ground. Mr. Renner's lower back collided with the door as he fell heavily, and he struck his head on the floor.

17. Defendant Polish then screamed epithets at Mr. Renner, including to "GET OFF MY FUCKING SHOW, YOU FUCKER!!"

18. Ms. Bosworth at first assisted Mr. Renner in rising from the floor. However, after he limped away, and Ms. Kearney was leaving the dining area, Ms. Bosworth started screaming at Ms. Kearney.

19. Back in Mr. Renner's and Ms. Kearney's hotel room, Mr. Renner's neck and back were increasingly tightening as a result of Mr. Polish's assault.

20. Sometime within a half hour after Mr. Polish's assault, BOTDH's Production Supervisor visited Mr. Renner and Ms. Kearney's hotel room to ask what had happened. Mr. Renner described Mr. Polish's unprovoked attack.

21. To the couple's surprise, the Production Supervisor did not appear interested in taking any appropriate remedial steps, prompt or otherwise. Instead, he sternly directed them: "DON'T DO ANYTHING, DON'T SPEAK TO ANYONE, I WILL FIX THIS." For minutes he admonished Mr. Renner and Ms. Kearney to keep the incident to themselves and not tell anybody. The Production Supervisor then left, stating that he would be in touch soon.

---

[1] As used in this Complaint, quotation marks denote statements made in words or substance.

22. Over the next approximately one hour, Mr. Renner texted the Production Supervisor multiple times, advising that his neck and back were tightening up as a result of Defendant Polish's attack. BOTDH's Production Supervisor did not reply.

23. At approximately 10:30 p.m., Mr. Renner called the police and an ambulance. Both arrived shortly thereafter. A police officer took the couple's statements and Mr. Renner was taken to the hospital.

24. The Production Supervisor, who learned that Mr. Renner had contacted the police, made a video call to Ms. Kearney. He berated her and Mr. Renner for reporting the assault, claiming it "threatened" his family's livelihood.

25. The Production Supervisor told Ms. Kearney that, unlike Mr. Polish and Ms. Bosworth, non-celebrities like Mr. Renner and Ms. Kearney "are no one." He told her that Mr. Polish and Ms. Bosworth "are kings." He told her, "You deserved it." At the end of these condemnations, the Production Supervisor summed up his position, insisting to Ms. Kearney that "it doesn't matter if [you] did nothing wrong, you are wrong."

26. At around 3 a.m. on October 22, 2020, the hospital released Mr. Renner with the diagnosis of a lumbar injury.

27. Later that morning, at about 8:30 a.m., BOTDH's Line Producer ordered Mr. Renner and Ms. Kearney to meet him in the hotel parking lot. There, he terminated both of them and provided "exit payment breakdown" paperwork. Mr. Renner and Ms. Kearney told the Line Producer that they did not have time to calculate all their hours worked as well as per diem, supply expenses, and kit fee, all of which the BOTDH contractually owed them.

28. The Line Producer then drove Mr. Renner and Ms. Kearney to the studios and shoot locations, forcing them to pick up their belongings in haste. He forbade other crew

members from helping the injured Mr. Renner and Ms. Kearney load their heavy equipment into the vehicle.

29. The Line Producer then left the couple at a rental car location, forcing them to book their own rental for the drive back home to Washington, D.C., despite BOTDH's contractual obligation to pay for this expense.

30. After Mr. Renner and Ms. Kearney returned to the hotel in the rental car to pack up their personal belongings, the Line Producer continued to harass them. He accused them, among other things, of stealing a fog machine from the set. The allegations were false.

31. The mass of equipment Mr. Renner and Ms. Kearney brought, as well as the Line Producer's harassment -- including forcing them to unpack all their belongings to "prove" they had not stolen the fog machine -- caused packing to take all day. As a consequence, they were forced to stay an extra night at the hotel and pay for it out of their own pocket.

32. Mr. Renner and Ms. Kearney finally left for the long drive home in the early morning hours of October 23, 2020. The drive home took longer than expected because Mr. Renner could only drive a maximum of two hours at a time due to continued pain resulting from Defendant Polish's assault.

33. From that attack, Mr. Renner still has pain in his back and neck when he turns his head. The pain is so severe that he cannot lift heavy equipment, which prevents him obtaining work in set design/art direction. His doctor has prescribed him a course of weekly physical therapy sessions that will last at least three months and must be paid out of pocket.

34. As a result of Defendants' wrongful actions, Mr. Renner has suffered physical injuries, lost wages, unpaid wages and reimbursements, and emotional distress.

//

**COUNT I: ASSAULT AND/OR BATTERY – Defendant Polish**

35. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

36. As described above, Mr. Polish engaged in acts intended to cause harmful and/or offensive contact with Mr. Renner and apprehension of such contact and created in Mr. Renner's mind a reasonable apprehension of an imminent battery.

37. Mr. Polish's acts also constituted an unwanted touching which is neither consented to, excused, nor justified.

38. As a result of Mr. Polish's assault and battery against Mr. Renner, Mr. Renner suffered physical injury and emotional distress.

39. Mr. Polish is thus liable to Mr. Renner for assault and/or battery in an amount to be determined at trial.

**COUNT II: BREACH OF CONTRACT – Defendants BOTDH and Make Pictures**

40. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

41. Mr. Renner and BOTDH and/or Make Pictures (the "Entities" collectively) entered into a contractual agreement related to Mr. Renner's employment.

42. This agreement required, among other things, that the Entities pay Mr. Renner $2,000 per week, plus 1.5 times base hourly wage for the entire 6th and 7th day of each week, for the duration of the employment period, which was to run from October 7 through December 15, 2020.

43. Mr. Renner performed his obligations to the Entities under the terms of their agreement.

44. The Entities violated their express contractual obligations to Mr. Renner by terminating the relationship prematurely without cause and by failing to pay the full wages and reimbursements due under the contract.

45. The Entities' breaches of contract have caused damages to Mr. Renner and his livelihood, including loss of income, damage to reputation, difficulty in finding other suitable employment, reduced earning capacity, mental and emotional distress manifesting in physical symptoms of stress and anxiety, out-of-pocket expenses, inconvenience, and other damages for which he is entitled to be compensated herein.

**COUNT III: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – Defendants BOTDH and Make Pictures**

46. Plaintiff hereby incorporates every other allegation in this complaint as though fully set forth herein.

47. Mr. Renner and the Entities entered into a contractual agreement related to Mr. Renner's employment, which agreement incorporated implied covenants of good faith and fair dealing.

48. These implied covenants required that the Entities would refrain from permitting its agents to assault and batter Mr. Renner, refrain from retaliating against him for reporting the assault and battery to law enforcement, and refrain from terminating the agreement prematurely without cause.

49. Mr. Renner performed his obligations to the Entities under the terms of their agreement.

50. The Entities violated their implied obligations to Mr. Renner by permitting its agents to assault and batter Mr. Renner, retaliating against him for reporting the assault and

battery to law enforcement, and terminating the agreement prematurely without cause.

51. The Entities' breaches of implied covenants have caused damages to Mr. Renner and his livelihood, including loss of income, damagc to reputation, difficulty in finding other suitable employment, reduced earning capacity, mental and emotional distress manifesting in physical symptoms of stress and anxiety, out-of-pocket expenses, inconvenience, and other damages for which he is entitled to be compensated herein.

**COUNT IV – NEGLIGENT AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – all Defendants**

90. Plaintiff hereby incorporates every other allegation in this complaint as though fully set forth herein.

91. Defendants owed duties of care to Mr. Renner.

92. Defendants violated duties of care owed to Mr. Renner by engaging in the conduct herein described, including assaulting and battering Mr. Renner, permitting their agents to assault and batter Mr. Renner, terminating Mr. Renner's employment in retaliation for his reports of the assault and battery to law enforcement, berating Mr. Renner and his wife in the aftermath of the assault and battery and blaming the incident on them, levelling false accusations including theft against Mr. Renner, and forcing an injured Mr. Renner to pack and unpack all of his equipment to disprove the false theft accusation.

94. These breaches of care by Defendants caused serious or severe emotional distress to Mr. Renner that was the reasonably foreseeable consequence of Defendants' intentional and/or negligent acts or omissions.

95. These breaches of care by Defendants caused damages to Mr. Renner, including financial damages as well as extreme emotional distress, manifesting physically. Mr. Renner is entitled to be compensated herein for such damages.

**COUNT V: NEGLIGENCE - Defendants BOTDH and Make Pictures**

52. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

53. The Entities had a duty to provide Mr. Renner with a reasonably safe place to work.

54. The Entities had control over the film production area, the capacity to provide a reasonably safe place to work and responsibility for and control over the actions of its employees and agents.

55. The Entities breached the applicable standard of care by, among other things, permitting an employee or agent to assault and batter Mr. Renner, and then protecting that agent and penalizing Mr. Renner for reporting his unlawful conduct to law enforcement.

56. The Entities' careless and negligent acts and omissions caused Mr. Renner's injuries described herein.

57. The Entities are jointly and severally liable for the negligence that caused Mr. Renner's injuries.

58. The Entities are liable to Mr. Renner for their own negligence in failing to provide Mr. Renner with a reasonably safe place to work and, pursuant to the doctrine of respondeat superior, for the negligence and intentional torts of their employees and agents described herein.

59. As a direct result of the Entities' conduct, Mr. Renner has suffered damages in an amount to be determined at trial, including, but not limited to, costs of past and future medical

care, lost wages and benefits, lost household services, other financial losses, pain and suffering, emotional distress, and loss of his established course of life.

**COUNT VI: NEGLIGENT SUPERVISION – Defendants BOTDH and Make Pictures**

60. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

61. The Entities had a duty to adequately supervise their employees and agents so as to prevent harm to any person, like Mr. Renner, who would foreseeably be placed within the scope of risk arising from negligent supervision.

62. The Entities breached their duty to adequately supervise their employees and agents by, among other things, retaining Mr. Polish in a supervisory position despite their knowledge of his violent tendencies, and retaining employees such as the Production Supervisor who would enable and promote his unlawful behavior.

63. The Entities' negligent supervision of their employees and agents caused Mr. Renner's injuries described herein.

64. The Entities are jointly and severally liable for the negligent supervision that caused Mr. Renner's injuries.

65. As a direct result of the Entities' conduct, Mr. Renner has suffered damages in an amount to be determined at trial, including, but not limited to, costs of past and future medical care, lost wages and benefits, lost household services, other financial losses, pain and suffering, emotional distress, and loss of his established course of life.

**COUNT VII: PUNITIVE DAMAGES – all Defendants**

66. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

67. Defendants acted with oppression, fraud, and/or malice, and in conscious disregard of the certainty their conduct could harm Mr. Renner.

68. Defendants acted with oppression by abusing their authority or power to retaliate against Mr. Renner for reporting the assault and battery.

69. Defendants acted fraudulently by making knowingly false accusations against Mr. Renner and blaming Mr. Renner for the unprovoked attack.

70. Defendants acted with malice by assaulting and/or battering Mr. Renner and retaliating against him for reporting the assault and battery, with conscious or intentional disregard or indifference to a high probability of injury to Mr. Renner.

71. Mr. Renner is entitled to an award of punitive damages against Defendants.

**Prayer for Relief**

WHEREFORE, Mr. Renner prays judgment against Defendants as follows:

1. For special and general damages such as are fair and reasonable in amounts to be determined at trial;

2. For costs of past and future medical care, lost wages and benefits, lost household services, and other financial losses in amounts to be determined at trial;

3. For punitive damages;

4. For Plaintiff's costs and fees incurred in pursuing this action as allowed by law; and

5. For such other and further relief as the Court deems just and proper.

///

DATED this 11th day of March, 2021.

PROCTER LAW, PLLC

By: ______________________
VERONICA A. PROCTER
*Attorney for Plaintiff*

DEMAND FOR JURY TRIAL

COMES NOW Plaintiff and demands a jury trial on all issues of facts raised herein.

DATED this 11th day of March, 2021.

PROCTER LAW, PLLC

By: ______________________
VERONICA A. PROCTER
*Attorney for Plaintiff*