**David B. Jonelis**
LAVELY & SINGER
Professional Corporation
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone: (310) 556-3501
Facsimile: (310) 556-3615
Email:      djonelis@lavelysinger.com

**Matthew A. McKeon**
DATSOPOULOS, MacDONALD & LIND, P.C.
Central Square Building
201 West Main Street, Suite 201
Missoula, Montana 59802
Telephone: (406) 728-0810
Facsimile: (406) 543-0134
Email:      mmckeon@dmllaw.com; hellison@dmllaw.com

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| **JOHN RENNER,** | Case No.:  CV-21-30-BU-BMM |
| Plaintiff, | |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** |
| **MICHAEL POLISH, BRING ON THE DANCING HORSES, LLC, a Montana Limited Liability Company, and MAKE PICTURES, LLC, a California Limited Liability Company,** | |
| Defendants. | |

Defendants, Michael Polish, Bring on the Dancing Horses, LLC
("BOTDH"), and Make Pictures, LLC (collectively, "Defendants"), by
and through their undersigned counsel, Matthew A. McKeon of the law
firm of Datsopoulos, MacDonald & Lind, P.C., and David B. Jonelis of
the law firm of Lavely & Singer, P.C., hereby submit this Brief in
Opposition to the Motion to Compel Discovery [Dkt. 35] filed by Plaintiff
John Renner ("Plaintiff").  As set forth herein, Defendants have
complied with both the letter and intent of the discovery rules, and thus
no basis exists to compel any further responses.  Accordingly,
Defendants respectfully request that the Court deny Plaintiff's motion
and award Defendants sanctions pursuant to Federal Rule of Civil
Procedure 37(a)(5).

## INTRODUCTION

Frankly, Plaintiff's Motion to Compel is nothing more than a
***meritless***, ***make-work*** exercise, and simply underscores the bad faith
intent of this entire action – which is to harass Defendants and drive-up
their litigation costs in the hope of obtaining a "cost of defense"
settlement.  Indeed, the very core premise of this case – that Plaintiff
was somehow damaged to the tune of hundreds of thousands of dollars

simply because he was pushed away in self-defense after threatening to pull a gun on Defendant Michael Polish – is ***outrageous***, and is easily refutable by the actual evidence here (including the testimony of those who actually witnessed the subject altercation).

To be clear, this is not a complex case by any stretch of the imagination.  Rather, as set forth in Plaintiff's operative complaint, this case concerns a "he said, he said" dispute over what happened during a brief altercation between Plaintiff and Mr. Polish (lasting no more than a few minutes), as well as a dispute over whether Plaintiff was improperly terminated by the entity Defendants in the wake of the altercation.   Nothing more.

Commensurate with the simplicity of this case, the universe of relevant information is extremely small, and there are only a handful of documents that exist concerning the subject events.  Indeed, in response to Defendants' discovery requests seeking all of Plaintiff's documents related to this case, Plaintiff produced less than 20 documents in total.[1] The size of Plaintiff's production was unsurprising, given that the majority of the relevant information concerning this dispute will be

---

[1] A copy of Plaintiff's entire document production is attached hereto as Exhibit "A."

based on the oral testimony of the few individuals who actually witnessed the subject events.  Those individuals are scheduled to be deposed in person during the first week of November 2021.

Although Defendants adamantly deny the allegations in Plaintiff's Complaint, they nonetheless recognize that they have a statutory obligation to provide Plaintiff, through discovery, with all of their non-privileged documents and information relevant to this case. Consequently, in response to Plaintiff's 99 (yes, 99) discovery requests (many of which were poorly or confusingly worded, or which sought documents wholly irrelevant to the allegations in Plaintiff's Complaint)[2], Defendants provided fulsome substantive responses and produced all of their responsive documents relevant to this case (14 in total, commensurate with the size of Plaintiff's production).[3]  Further, to the extent that the form or substance of Plaintiff's requests was objectionable, Defendants also asserted appropriate objections.

As the Court can readily confirm for itself by reviewing Defendants' responses, Defendants complied both with the language and intent of the relevant discovery rules – namely, Federal Rules of

---

[2] In stark contrast, Defendants collectively propounded a total of 11 narrowly-tailored discovery requests on Plaintiff.

[3] A copy of Defendants' entire document production is attached hereto as Exhibit "B."

Civil Procedure 33 and 34, as well as Local Rule 26.3.  Specifically, to the extent that Plaintiff requested information "relevant to any party's claim or defense and proportional to the needs of the case" (*i.e.*, within the permissible scope of Rule 26), Defendants provided that information.  To the extent that information could most appropriately be relayed in the form of a substantive written response (*e.g.*, in response to Plaintiff's interrogatory seeking "each fact known to you regarding the October 21, 2020, physical altercation"), Defendants provided such a written response.  And to the extent that information could more appropriately be provided through documentary evidence (*e.g.*, in response to Plaintiff's interrogatory seeking "an itemization of all money paid to [Plaintiff]"), Defendants produced such documentary evidence.

Irrespective of whether provided in narrative or documentary form, Defendants' responses to Plaintiff's discovery should have sufficiently apprised Plaintiff of the full scope of Defendants' information and documents concerning of the facts relevant to this case – which is the very purpose of discovery. *See N. Pac. Ins. Co. v. Stucky*, 2013 WL 12134040, at *2 (D. Mont. Dec. 17, 2013) ("The purpose of

discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.").  And to the extent that Plaintiff wanted further clarification from Defendants concerning their responses, Plaintiff was already given the unfettered opportunity to do so by way of the parties' upcoming depositions in November.

Nonetheless, Plaintiff has now come before this Court claiming that Defendants' discovery responses were somehow deficient, and that Plaintiff should be awarded sanctions as a result.  And on what basis does Plaintiff burden this Court with such a bold proposition? Apparently, when Plaintiff asked Defendants to identify all witness statements that they had obtained concerning the subject events, it was not sufficient for Defendants to simply produce those statements as part of their document production. Rather, Plaintiff contends that Defendants should have summarized the content of those statements in "narrative" form – even though Plaintiff could simply look at the statements themselves to ascertain the content thereof.  *See, e.g.,* Motion at p. 4.  And when Plaintiff asked Defendants to produce their documents related to the subject events in this case, Plaintiff contends

it was not sufficient for Defendants to simply produce those documents. Rather, Plaintiff absurdly contends that Defendants should have pointed out, <u>by Bates-number</u>, which of the 14 documents produced pertained to which of Plaintiff's numerous document requests – even though the documents speak for themselves.  *See, e.g.,* Motion at p. 15. These are the types of <u>nonsense</u> and <u>time-wasting</u> arguments raised in Plaintiff's motion, none of which are grounded in any *bona fide* legal support.

As set forth herein, Defendants have complied with their discovery obligations, no basis exists to compel further responses, and Plaintiff should be thus ordered to reimburse Defendants for their cost in opposing Plaintiff's Motion. Hopefully the Court will see through Plaintiff's charade and view the Motion for what it is: <u>make-work</u>.

## BOTDH PROPERLY RESPONDED TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

In his motion, Plaintiff takes issue with BOTDH's responses to eight of Plaintiff's interrogatories.  The sufficiency of those responses is addressed below:

## Interrogatories Nos. 2, 4, and 15

Interrogatory No. 2 asked BOTDH to "state the name and address of each person having knowledge of relevant facts related to the allegations of the Complaint in this suit, the cause thereof, or the damages allegedly resulting therefrom."  This is effectively the exact same information that Defendants had already set forth in their initial disclosures, as required pursuant to Federal Rule of Civil Procedure 26(a)(1)(A).[4]  Accordingly, in the interest of efficiency and pragmatics, BOTDH simply pointed Plaintiff to Defendants' prior disclosures, writing: "all information responsive to this interrogatory was already disclosed in section i. of Defendants' June 10, 2021 Initial Disclosures."

Interrogatory No. 4 asked BOTDH to "state whether or not you have obtained a statement, oral, recorded or written, which any individual has previously made concerning this action or its subject matter and the date it was obtained and provide a detailed description of the contents of the statement."  Again, in the interest of efficiency and pragmatics, BOTDH simply agreed to provide Plaintiff with the actual witness statements it had obtained, writing: "BOTDH will

---

[4] A copy of Defendants' June 10, 2021 Initial Disclosures is attached hereto as Exhibit "C."

produce any non-privileged written statements in its possession, custody, or control concerning the events at issue in this suit." And those statements were in fact included in the documents produced by Defendants.[5]

Interrogatory No. 15 asked BOTDH to provide "an itemization of all money paid to [Plaintiff] by BOTDH, including, but not limited to, wages, per diem, and cost reimbursements." Stated otherwise, this interrogatory sought an accounting of what Plaintiff had been paid by BOTDH. Again, because that information had already been separately documented by BOTDH, it simply responded by offering to "produce documents sufficient to determine all money paid to John Renner in connection with the project entitled *Bring On The Dancing Horses*." And those documents were likewise included in Defendants' document production.[6]

Notably, Plaintiff's motion does not contend that BOTDH failed to provide the substantive information responsive to Interrogatories Nos. 2, 4, and 15 – nor could Plaintiff take such a position, since BOTDH produced the documents containing the requested information. Rather,

---

[5] *See* Defendants' document production (Exhibit "B" hereto) at pages 22-30.

[6] *See* Defendants' document production (Exhibit "B" hereto) at pages 19-21.

Plaintiff merely faults (and outrageously attempts to seek sanctions against) BOTDH for the <u>form</u> of its responses, contending that BOTDH should have provided a "narrative" summary of information in its written responses, as opposed to producing the actual documents containing the information requested.

Plaintiff's focus on form over substance is an abuse of the discovery process, a waste of the Court's time, and notably unsupported by Plaintiff's own cited authorities.  For example, *Perdue v. Gagnon Farms. Inc.,* 65 P. 3d 570 (Mont. 2003), simply dealt with a party's obligation (under Montana state, not federal, law) to supplement prior discovery responses.  That case does not in any way support the proposition that a party cannot produce documents in lieu of a narrative interrogatory response.   Further, *Bayview Loan Servicing, LLC v. Boland,* 259 F.R.D. 516, 519 (D. Colo. 2009), actually supports <u>Defendants'</u> position here – insofar as the court recognized that "[a] party may refer to records, as opposed to providing a narrative, if the records are clearly identified."[7]  And that is <u>precisely</u> what BOTDH did here when it clearly identified the documents – *i.e.*, its prior initial

---

[7] Plaintiff's deceptive attempt to mischaracterize the import of his cited authorities should not be countenanced by the Court.

disclosures, its witness statements, and its financial accounting – that were responsive to Interrogatories Nos. 2, 4, and 15.

**Interrogatory No. 5**

Interrogatory No. 5 asked BOTDH to "[d]escribe in detail the organizational structure of BOTDH, including, but not limited to, (1) the ownership of BOTDH, (2) the management structure of BOTDH, (3) a list of other entities owned by BOTDH, (4) the employees of BOTDH, and (4) the business purpose(s) of BOTDH."  In response, BOTDH objected, including on the basis of relevance and overbreadth, and then stated: "BOTDH is a Montana LLC with a single member: Make Pictures, LLC."

Plaintiff's Motion criticizes (and attempts to sanction) BOTDH for its response, claiming that "Mr. Renner is entitled to know who supervised who and who was responsible for what."  And yet, Interrogatory No. 5 does not actually request any information concerning supervision or responsibility in connection with Plaintiff's alleged assault or termination, nor is it clear how the incredibly broad information sought by Interrogatory No. 5 would bear on that information.  To be clear, if Plaintiff wanted to know who was

supervising Mr. Polish at the time of the alleged assault, or who was responsible for Plaintiff's alleged termination, Plaintiff could (and should) have propounded an interrogatory specifically requesting that information – or perhaps more efficiently, can inquire about this issue during the upcoming depositions of Defendants.  But instead, Plaintiff broadly requested information that – by Plaintiff's own lack of an explanation – has no relevance to his actual claims in this action. Indeed, what does BOTDH's "management structure" or "business purpose" have to do with whether Plaintiff was assaulted or wrongfully terminated?  Nothing whatsoever!

Consequently, BOTDH's objections were properly raised, and its response identifying its ownership structure was sufficient.  No further response is necessary or appropriate.

### Interrogatory No. 10

Interrogatory No. 10 asked BOTDH to "[d]escribe in detail all steps, policies, and procedures, both formal and informal, that you employ to ensure that your management, personnel and agents do not present a risk of physical harm towards other individuals involved in your filming projects."  In response, BOTDH objected, including on the

bases of irrelevance and overbreadth, and then stated: "BOTDH took all reasonable steps to ensure that no one involved in the subject production incurred any risk of physical harm."

Critically, Plaintiff's Motion does not even purport to explain the relevance of this Interrogatory.  Nor is it evident how BOTDH's <u>general</u> policies and procedures have anything to do with the <u>specific</u> dispute here – *i.e.*, whether or not Plaintiff was assaulted and/or wrongfully terminated.  Nor is it even clear what is being asked by this Interrogatory; what does it mean to "ensure" that someone does not "present a risk of physical harm towards other individuals"?   Plaintiff's Motion does not provide this clarification (nor did Plaintiff provide any such clarification during the meet and confer process).  Hence, BOTDH's objections were well-founded.

Notwithstanding its objections, BOTDH attempted in good faith to provide a substantive response by construing Interrogatory No. 10 in a reasonable and meaningful fashion – *i.e.*, that Plaintiff was asking if BOTDH took any steps to prevent harm to its employees.  To the extent that Plaintiff seeks more detailed information in this regard, such an

inquiry would be better suited for the upcoming deposition of BOTDH's corporate designee.

### Interrogatories Nos. 11-13

Interrogatories Nos. 11-13 asked BOTDH to describe the "employment history" of three named individuals – Mr. Polish, Kyle Crosby, and a "Stephan Bartlett" – including their "date of hire" "qualifications and background," "performance history," "job duties," promotions," and "any complaints (formal or informal) made against [them]." In response to all three interrogatories, BOTDH objected on, *inter alia,* irrelevance and overbreadth grounds.  BOTDH further objected to Interrogatory No. 12 on the truthful basis that it was unaware of anyone named "Stephan Bartlett."

Once again, Plaintiff's motion fails to substantiate the relevance of these interrogatories.  Nor is it clear how the requested information concerning such topics as hiring dates, promotions, and job qualifications has any logical bearing whatsoever on Plaintiff's assault and termination contentions.  For example, how would the date when Mr. Polish was hired impact the issue of whether he assaulted Plaintiff? And how would Mr. Crosby's job duties impact the issue of whether

Plaintiff was wrongfully terminated?  Hence, BOTDH's objections were appropriate.

Plaintiff's motion also brushes over the import of the fact that Interrogatory No. 12 apparently sought information about BOTDH's employee Stephen Barrett, yet misspelled Mr. Barrett's name as "Stephan Bartlett."  Given that discovery responses are effectively admissions to which the responding party is bound for the rest of a case, BOTDH had no obligation to provide information about Mr. Barrett when asked about a "Stephen Bartlett."  Nor has Plaintiff cited any authority supporting such an obligation.  And yet, even though Plaintiff was well-aware of Mr. Barrett's correct name – including due to the fact that Mr. Barrett was named in Defendants' initial disclosures – Plaintiff now seeks to penalize (and sanction) BOTDH for declining to correct Plaintiff's own mistake when responding to Interrogatory No. 12.

Notwithstanding its objections to Interrogatories Nos. 11 and 13, BOTDH still provided a substantive response, stating that Mr. Polish was "employed by BOTDH for the limited purpose of directing and producing the subject project entitled *Bring On The Dancing Horses*"

and "has a well-documented history of producing, writing and directing successful projects," and stating that Mr. Crosby "was employed by BOTDH as the line producer of the project entitled *Bring on the Dancing Horses.*"

Further, in light of Plaintiff's written clarification that Interrogatory No. 12 was intended to pertain to Stephen Barrett, BOTDH has now amended its response to state that "Mr. Barrett was employed by BOTDH as production supervisor for the project entitled *Bring on the Dancing Horses.*"[8]

Plaintiff has failed to explain how any additional information, beyond what was already stated by BOTDH in response to these interrogatories, is relevant here.  Consequently, there is no basis to compel any further response to these interrogatories.

## MAKE PICTURES AND MICHAEL POLISH PROPERLY RESPONDED TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Plaintiff takes issue with Make Pictures' responses to five of Plaintiff's interrogatories and Mr. Polish's responses to three of the interrogatories.   However, as the subject interrogatories and responses

---

[8] A copy of BOTDH's amended interrogatory responses is attached hereto as Exhibit "D."

are for all intents and purposes identical to the interrogatories and responses already discussed above with respect to BOTDH, and given that Plaintiff's position on these interrogatories is ostensibly the same as for the above-discussed interrogatories (including Plaintiff's failure to substantiate the relevance of the interrogatories at issue), Make Pictures and Mr. Polish simply incorporate the above-stated arguments by reference in order to save the Court from having to re-read the exact same arguments.

For all the same reasons already stated above as to BOTDH, there is no basis to compel any further responses from Make Pictures or Mr. Polish.

## BOTDH PROPERLY RESPONDED TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

Plaintiff takes issue with BOTDH's responses to nine of Plaintiff's documents requests.  The sufficiency of those responses is addressed below:

### Requests for Production Nos. 1-4, 6, 8

With respect to these six requests, Plaintiff's only apparent gripe is that BOTDH did not specifically identify which of the 14 documents in its production were responsive to each of Plaintiffs' requests.

Notably, however, Plaintiff has failed to cite any authority that
would have obligated BOTDH to engage in such a make-work exercise –
nor are Defendants aware of any such authority.   Rather, the cases
cited by Plaintiff – all but one of which are from outside this jurisdiction
– addressed situations where (unlike here) a party had effectively
produced a "document dump," forcing the receiving party to wade
through thousands and thousands of pages in order to locate responsive
documents.  *See Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476,
509 (N.D. Tex. 2016) (the defendant had improperly "refer[red] to a
***voluminous*** amount of documents and implie[d] that there are
responsive documents in there somewhere."); *Stooksbury v. Ross*, 528 F.
App'x 547, 550 (6th Cir. 2013) ("the near 40,000–page discovery
submission was an unresponsive 'document dump' that also failed to
include Bates stamp numbers as required").[9]  And even so, the court in
*Cole v. Fed. Bureau of Investigations* actually found that the defendants
there had "***exceeded*** the requirements of meeting discovery obligations

---

[9] In *Cole v. Fed. Bureau of Investigations,* 2019 WL 1904883, at *4 (D. Mont. Apr. 29, 2019) – the
court actually found that the defendants had "***exceeded*** the requirements of meeting discovery
obligations by directing Plaintiffs to each and every document that Plaintiffs [had] claim[ed] to have
been omitted in the prior production."  And in *Neale v. Coloplast Corp.*, 2020 WL 6948361, at *6
(E.D. Tenn. Nov. 2, 2020), the court ***declined*** to order the defendant to identify all of its responsive
documents by Bates-number, even though the defendant had produced thousands of pages of
documents.

by directing Plaintiffs to each and every document that Plaintiffs [had] claim[ed] to have been omitted in the prior production." 2019 WL 1904883, at *4 (D. Mont. Apr. 29, 2019) (emphasis added).  Likewise, in *Neale v. Coloplast Corp.*, the court ***declined*** to order the defendant to identify all of its responsive documents by Bates-number, even though the defendant had produced thousands of pages of documents. 2020 WL 6948361, at *6 (E.D. Tenn. Nov. 2, 2020).[10]

Here, in stark contrast to the cases cited by Plaintiff, Plaintiff cannot credibly contend that the 14 documents produced by BOTDH were somehow a "document dump." Nor has Plaintiff explained how he cannot independently ascertain the subject matter and relevance of the 14 documents produced by BOTDH.  And if Plaintiff truly believes that further information or clarification about the documents is necessary, the most appropriate and efficient way to obtain that information is at Defendants' upcoming depositions.

## **Request For Production No. 7**

Request No. 7, which sought "all documents related to the organizational structure of BOTDH," is objectionable for all the same

---

[10] Again, Plaintiff's mischaracterization of legal authority should not be countenanced.

reasons already discussed above in connection with BOTDH's response to Plaintiff's Interrogatory No. 5.

In particular, while Plaintiff contends in his motion that he "is entitled to know who supervised who and who was responsible for what," this request does not actually seek any documents that would bear on those issues.  Indeed, how does BOTDH's organization structure have any relevance to showing whether Plaintiff was assaulted or improperly terminated?  It does not.

And in any event, the organizational structure of BOTDH was already set forth in response to Interrogatory No. 5 – namely, that "BOTDH is a Montana LLC with a single member: Make Pictures, LLC."  Thus, this request was completely superfluous and unnecessary, BOTDH's objections were appropriate, and Plaintiff cannot seek to fault (or sanction) BOTDH for its refusal to produce "all" of its documents pertaining to its organizational structure.  To the extent that the organizational structure is even relevant (it is not), Plaintiff has already been provided with that information through BOTDH's response to Interrogatory No. 5.

## Requests For Production Nos. 9-10

These two requests, in particular, underscore Plaintiff's true intent of trying to make Defendants jump through unnecessary hoops in order to drive up their litigation costs.  Specifically, while these requests purport to seek information about BOTDH's insurance policies, Plaintiff was already apprised by Defendants' initial disclosures that BOTDH does not have coverage for the claims asserted in this action. Indeed, as required under Federal Rule of Civil Procedure 26(a)(1)(A), Defendants' initial disclosures unequivocally stated as follows:

> "Defendants are not aware of any insurance agreement under which an insurance carrier may be liable to satisfy all or part of a possible judgement in the action or to indemnify or reimburse for payments made to satisfy the judgment."[11]

In light of this statement in Defendants' initial disclosures, there was no *bona fide* basis for Plaintiff to seek documents concerning BOTDH's insurance policies.  Nor was it proper for Plaintiff to broadly request copies of all communications between BOTDH and its insurance carrier – irrespective of whether such communications even pertained to the matters at issue in this case.  Consequently, BOTDH's objections (including on the basis of irrelevance and overbreadth) were

---

[11] *See* Exhibit "C" hereto at p. 5.

appropriate, and Plaintiff's attempt to seek sanctions against BOTDH

as a result is, quite frankly, offensive.  In essence, Plaintiff is

attempting to penalize BOTDH for Plaintiff's own apparent failure to

carefully review Defendants' initial disclosures.

## MAKE PICTURES AND MICHAEL POLISH PROPERLY RESPONDED TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

While Plaintiff takes issue with nine of Make Pictures' responses

to Plaintiff's document requests and nine of Mr. Polish's responses, all

but one of the subject requests are effectively identical to the requests

already discussed above with respect to BOTDH.  Accordingly, Make

Pictures and Mr. Polish once again incorporate the above-stated

arguments by reference in order to save the Court from having to re-

read the exact same arguments, and submit that no basis exists to

compel further responses as to those requests.

The only document request that was not already discussed above

is Request No. 10 to Mr. Polish.  That request is discussed below.

### Request For Production No. 10 to Michael Polish

While this Request purported to broadly seek "all complaints and

criminal charges filed against you within the past ten years," the true

intent of the request is evident from Plaintiff's motion, in which Plaintiff admits unequivocally that this request was intended to obtain documents showing "Mr. Polish's history of violence."  Of course, even looking past the fact that Mr. Polish has no such history of violence, the Federal Rules of Evidence expressly prohibit Plaintiff from using "evidence of any other crime, wrong, or act" to prove Mr. Polish's character "in order to show that on a particular occasion [Mr. Polish] acted in accordance with the character."  *See* Fed. R. Ev. 404. Consequently, the type of documents that Plaintiff admittedly sought through this Request, even if they existed (they do not), would be sought for an improper and inadmissible purpose.  Hence, Mr. Polish's objections.

Nonetheless, in order to put the issue of Mr. Polish's alleged history of violence to rest, Mr. Polish has now amended his response to this request to clarify that "no criminal charges have been filed against Mr. Polish in the past 10 years, nor has Mr. Polish been accused of any violent act during that time period (other than Plaintiff's disputed allegation in this action)."[12]

---

[12] A copy of Mr. Polish's amended response is attached hereto as Exhibit "E."

## CONCLUSION

WHEREFORE, for all the reasons stated above, Defendants hereby respectfully submit that Plaintiff's motion should be denied. Further, pursuant to Federal Rule of Civil Procedure 37(a)(5), Defendants respectfully submit that Plaintiff and his counsel should jointly and severally be ordered to pay Defendants their reasonable attorneys' fees incurred in opposing Plaintiff's motion.  Pursuant to Section 5 of the Court's Scheduling Order, the total amount of those fees (not including any fees incurred in connection with the hearing on Plaintiff's motion) is set forth in the concurrently filed Affidavit of Matthew A. McKeon.

DATED this 24th day of September, 2021.

DATSOPOULOS, MACDONALD & LIND, P.C.

By: */s/ Matthew A. McKeon*
Matthew A. McKeon
*Attorney for Defendants*

## <ins>CERTIFICATE OF COMPLIANCE</ins>

Pursuant to D. Mont. L.R. 7.1(d)(2), I certify that:

This brief complies with the type-volume limitation of D. Mont.

L.R. 7.1(d)(2) because this brief contains 3,961 words, excluding the

parts of the brief exempted by D. Mont. L.R. 7.1(d)(2)(E).

This brief has been prepared in a proportionately spaced typeface

using Microsoft Word Century Schoolbook 14-point font.

DATED this 24th day of September, 2021.

DATSOPOULOS, MACDONALD & LIND, P.C.


By: */s/ Matthew A. McKeon*
  Matthew A. McKeon
  *Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>
L.R. 5.2(b)

I, Matthew A. McKeon, attorney for Defendant, hereby certifies that a copy of the DEFENDANTS' OPPOSITION TO MOTION TO COMPEL was served on these persons by the following means this 24th day of September, 2021:

<u>1, 2, 3</u> CM/ECF

1.    Clerk, U.S. District Court

2.    **Veronica A. Procter**
PROCTER LAW, PLLC
2718 Montana Avenue, Suite 200
P.O Box 782
Billings, Montana 59103
Telephone: (406) 294-8915
Email: <u>vp@procterlawfirm.com</u>

3.    **ALLRED, MAROKO & GOLDBERG**
6300 Wilshire Boulevard, Suite 1500
Los Angeles, California 90048
Telephone: (323) 653-6530
Email: <u>gallred@amglaw.com</u>; <u>mspiegel@amglaw.com</u>; <u>blau@amglaw.com</u>

DATED this 24th day of September, 2021.

DATSOPOULOS, MACDONALD & LIND, P.C.


By: */s/ Matthew A. McKeon*
Matthew A. McKeon
*Attorney for Defendants*